Laura M. Catina (LC2998)
Amy M. Mara (AM0521)
Catina & Mara, PLLC
3 E. Evergreen Rd. #358
New City, New York 10956
T: (845) 709-8968
F: (845) 709-8882
laura@catinamara.com
amy@catinamara.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DR. SHEFALI TSABARY and GLOBAL
INNER DISARMAMENT, LLC,                   Civil Action No.

                Plaintiffs,

    -against-                                **COMPLAINT AND**
                                                  **JURY DEMAND**

GRETA HARMAN,

                Defendant.
-----------------------------------------------------------X

       Plaintiffs, Dr. Shefali, Tsabary (hereinafter "Dr. Shefali") and Global Inner Disarmament, LLC, by and through their attorneys, Catina & Mara, PLLC, sets forth the following as and for their Complaint against the Defendant, Greta Harman:

## **NATURE OF THE CASE**

     1. This case arises out of the embezzlement and conversion of more than one million dollars by Defendant from Plaintiffs and Defendant's subsequent defamatory statements about Dr. Shefali. Dr. Shefali, a world-renowned clinical psychologist, hired Defendant to work for her in 2017 in an administrative role. Unbeknownst to Plaintiffs, shortly after Defendant was hired, she began stealing money from Plaintiffs and transferring funds earned by Plaintiffs to Defendant's personal bank accounts. As set forth herein, Defendant created a scheme where she would switch the bank accounts where funds were to be deposited for payments made for Dr. Shefali's teaching

platform back and forth from her own personal accounts and Plaintiffs' accounts. Dr. Shefali eventually discovered what was happening and confronted Defendant.

2. Dr. Shefali attempted to resolve the issue with Defendant but to no avail. Defendant admitted the theft, both to Dr. Shefali, third party witnesses and Defendant's Instagram account, and repaid a small portion of what she stole. Then, Defendant disappeared. Rather than repaying Plaintiffs, Defendant resurfaced in late 2022 by making defamatory statements on Instagram and TikTok about Dr. Shefali in her capacity as a clinical psychologist accusing her of criminal acts and of mental abuse. As set forth herein, Defendant's actions establish that the defamatory statements made about Dr. Shefali were made with actual malice and intent to harm her reputation.

3. Notwithstanding the cease-and-desist letter that was sent to Defendant, and which she acknowledged receiving in a subsequent video posted on Instagram and TikTok, Defendant has refused to remove the defamatory statements and continues to post/comment about Dr. Shefali on social media, including about how she is going to reveal her "truth" and will have to "find another way" to go about it.

4. Not only has Defendant stolen more than a million dollars from Plaintiffs, but now because of the defamatory statements made by Defendant publicly about Dr. Shefali, Dr. Shefali continues to receive comments and questions from various people about whether the comments are true and about Defendant's statements whereby she accused Dr. Shefali of mental abuse and criminal acts. The defamatory statements made by Defendant are defamatory *per se* about Dr. Shefali in her capacity as a clinical psychologist.

5. Based upon Defendant's conduct, Plaintiffs are (i) seeking to recoup the money stolen by Defendant; (ii) damages for the defamatory statements made by Defendant; (iii) injunctive relief requiring that Defendant remove the defamatory statements from Instagram, TikTok, and any other

platform on which she has made such statements; and (iv) an injunction enjoining Defendant from making any such statements in the future.

## JURISDICTION AND VENUE

6. Jurisdiction over this action is proper pursuant to 28 USC §§1332(a) and 1367(a). The amount in controversy exceeds $75,000.00.

7. Venue is proper in this district as the Plaintiffs reside in this district and a substantial part of the events that give rise to the claims occurred in this district.

## THE PARTIES

8. Plaintiff, Dr. Shefali Tsabary, is a natural person residing in Nassau County, New York.

9. Plaintiff, Global Inner Disarmament LLC, is a domestic limited liability company organized and existing under the laws of the State of New York with its principal place of business located in Nassau County, New York.

10. Upon information and belief, Defendant, Greta Harman, is a resident of California, but is currently residing in either Florida or Maryland.

## STATEMENT OF FACTS

11. Dr. Shefali is a world-renowned clinical psychologist, international speaker, wisdom teacher and New York Times best-selling author.

12. In or around 2017, Defendant expressed an interest in working for Dr. Shefali when she met her at a book-signing.

13. Defendant was eventually hired as an independent contractor in or around 2017 by Plaintiffs in an administrative role, which included marketing.

14. When Defendant was hired, she was instructed to set up an account for Dr. Shefali on www.teachable.com (hereinafter "Teachable") where Dr. Shefali could sell her online courses.

3

15. Defendant set up an account for Dr. Shefali on Teachable called The Conscious Classroom and Dr. Shefali was supposed to be paid directly for those courses.

16. The only courses sold in The Conscious Classroom are Dr. Shefali's online courses.

17. When a customer (called a "creator" in Teachable) signs up for a Teachable account, they are deemed the primary owner of their "school."

18. Upon information and belief, a primary owner can customize its school to include other administrative users, including non-primary owners and authors.

19. Upon information and belief, the primary owner is the only one who retains unrestricted permission to the Teachable account and whenever an entity signs up for an account, the individual creating the account is considered the primary owner.

20. The Teachable account was originally established on November 8, 2017. At that time, the user who signed up for the Teachable account, and who was therefore deemed the Primary Owner, was Defendant.

21. Defendant was never instructed to set up the account in her own name.

22. Once the Teachable account was established, a school entitled "Conscious Classroom" was launched under the account.

23. As part of her responsibilities, Defendant had full access to Dr. Shefali's account on Teachable including the bank accounts into which payments for her online courses sold on her website were deposited into.

**Defendant Begins Stealing Money Received for Courses Sold Almost Immediately**

24. During the time-period December 2017 through December 2020, Defendant continuously transferred payments for Dr. Shefali's courses that were sold on Teachable into Defendant's personal bank accounts and Paypal account.

4

25. At no point in time did Defendant ask for, or receive, Dr. Shefali's permission to transfer any payments received through Teachable to Defendant's personal accounts.

26. Upon information and belief, when Defendant first created the account with Teachable in December 2017, she had the payments for the courses deposited into her Paypal account.

27. To cover up her scheme, Defendant would switch the bank accounts into which payments for the courses sold on Teachable would be deposited; with deposits alternating back and forth into Defendant's personal accounts then into Dr. Shefali's account and back to Defendant's account and so on.

28. Upon information and belief, Defendant continued to embezzle the funds by switching the bank accounts back and forth continuously for three years.

29. In December 2020, Dr. Shefali grew suspicious when she looked at her bank account into which revenues from the Teachable platform were believed to have been deposited because she thought she should have made significantly more money from the sales of her online courses than what was reflected in her bank account.

30. In January 2021, Dr. Shefali contacted Teachable but the company told her that she could not get into the account because she was not technically the owner as Defendant set up the account. Dr. Shefali immediately contacted Defendant regarding this issue and Defendant immediately contacted Teachable to have primary ownership of the account transferred to Dr. Shefali.

31. Once Dr. Shefali had access to the account, she reviewed the payment history, which reflected payments from her online courses being transferred to bank accounts that she did not recognize.

32. Dr. Shefali further discovered that her bank account was repeatedly switched out by another account that she did not recognize.

33. Upon discovering this information, Dr. Shefali reached out to her staff regarding the bank accounts that she did not recognize. Initially, Defendant denied knowing whose account it was.

34. Dr. Shefali subsequently contacted Teachable again to determine who had made the switch back and forth between bank accounts and was advised that it was Defendant.

35. Dr. Shefali then confronted Defendant, who finally admitted to stealing the money.

36. The total amount of money that Defendant stole from Dr. Shefali was $1,138,113.98.

37. On January 5, 2021, Defendant wired Dr. Shefali $40,000.00.

38. On January 6, 2021, Defendant wired Dr. Shefali $60,000.00.

39. On January 7, 2021, Defendant sent Dr. Shefali $900.00 via quick pay through JP Morgan Chase. This was the last payment made by Defendant to Dr. Shefali to reimburse her for the money that she stole.

40. In a call with Dr. Shefali on January 5, 2021, Defendant reiterated her admission to stealing the money from Plaintiffs, and arguably with a semblance of remorse, stated:

> "I also deeply betrayed, to my Husband and my children, I am nothing but a lie, I lied and stole to be someone I thought that they wanted, what I thought they would think is successful and powerful. I have done something horrible that has caused the most awful pain to someone whom I love and care for so deeply. I'm disgusted with myself and my actions, this is just a repeating pattern of my whole life based on a feeling that I've never been enough. Based on a feeling of not being seen, based on a feeling of unworthiness, based on a feeling of self-hatred.... This was not about you, I never thought that you were stupid, I never thought you were dumb, I think you are the most amazing person and I'm just so sorry."

41. Defendant's embezzlement is further evidenced by the substantial shift in her lifestyle

once she started working with Dr. Shefali.

42. Prior to working with Dr. Shefali, Defendant's posts on social media were subdued, including mostly posts about her family, educational content, and various multilevel marketing companies that she appears to have been affiliated with.

43. Upon information and belief, in 2014, Defendant declared bankruptcy.

44. In 2018, however, shortly after Defendant began working with Dr. Shefali, Defendant appears to have taken seven vacations and received high-priced spa treatments.

45. In 2019, Defendant continued her lavish lifestyle, including trips to Jamaica, Costa Rica, Las Vegas and Mexico, as well as other events, such as professional sporting events and concerts.

46. In 2020, before the pandemic, Defendant continued with expensive trips and sporting events. In November 2020, it appears Defendant went on a luxury vacation to Mexico.

47. In addition, Defendant paid for her daughter to attend an expensive private school in California, as well as the University of Miami, purchased a brand-new Mercedes Benz, another car and an $8,000 bag for her daughter, as well.

48. Once Dr. Shefali discovered Defendant's embezzlement and confronted Defendant in or around December 2020, the social media posts sharing various luxury vacations and material items stopped.

**Defendant's Defamatory Statements**

49. When Defendant resurfaced in or around September 2021, she admitted in a video that she posted on Instagram that she had done some things she was not proud of and that "some people may say that's stealing" and "Some people may say that's embezzlement."

50. Upon information and belief, following her termination, Defendant's personal life began to unravel, and she and her husband divorced. It was in or around October 2021 that Defendant began her rants about Dr. Shefali on social media platforms.

51. In text messages that Plaintiffs obtained that were exchanged between Defendant and a third-party, Defendant made clear what her intent was behind the posted defamatory statements to come. In one text message exchange, Defendant stated, in part,

> "Im OK now. And now more than ever I want there to be justice. Not just for me but for everyone that that fucking bitch takes advantage of in the name of consciousness."

52. On or about December 6, 2022, Defendant stated in a post on Instagram that she had suffered "abuse at the hands of a well-known clinical psychologist (and her doctor boyfriend)." One of the hashtags that she used was "#drshefalitsabary".

53. Defendant continued in the same post, "I was gaslit and psychologically manipulated to the point of wanting to unalive myself. I was broken down and beaten psychologically at the hands of someone who is supposed to do no harm."

54. Directing her statement to Dr. Shefali specifically, Defendant further stated in the same post, "What you did was criminal…"

55. On or about December 8, 2022, Defendant made the following post on TikTok:

> "Gaslighting and narcissistic abuse is disorienting and challenging to navigate. When the narcissistic abuse comes from a mental health clinician and someone well revered with credentials and a huge platform and thousands of faithful believers it becomes a complete mind f*ck. If you've ever been gaslit by a mental health clinician or medical doctor, you are not crazy and you're not alone. We need to speak up and take our power back."

56. In the foregoing post, Defendant used the hashtags "#drshefali" and "drshefalitsabary".

57. On December 9, 2022, Defendant stated in a post on Instagram, which includes a video excerpt of a likeness of Dr. Shefali on her Teachable platform to her online community, that,

> "After I spent three and a half years in service to you and your content, after I made you more than 10 million dollars, it wasn't enough. I almost took my life at your hands, and it has taken me two years to heal from the abuse, the gaslighting, the psychological and emotional manipulation you put me and my family through. And I am ready to talk now, and I am ready to release the receipts. You've made enough money off of me and now it is time for the truth to be told. I am not afraid of you anymore. In fact, I love you."

58. In response to the December 9, 2022 Instagram post, Defendant responded to the comments made thereupon with statements such as:

   a. "I did not borrow money and I did not owe her anything. There was a business discrepancy, between her LLC and my LLC regarding compensation that she twisted to fit her narrative while gaslighting me and my then husband and used our confidential and very personal information against us in a very public and defaming way."

   b. "How do I steal money from my own company? Dr. S left that part out unfortunately."

   c. "There was no missing money. Period."

   d. ". . . I am speaking up for myself and anyone else who has been taken advantage of unfairly by someone with massive influence. The leaders in the consciousness space need to be held accountable just as much as anyone else. My situation is no different than what Harvey Weinstein did to all those women, only there was no sex involved."

e. "It's taken me two years to do my own healing so I can speak from a place of non-attachment and without reactivity. This was a business matter between her LLC and my LLC and it should have remained that way. Unfortunately she decided to make it personal and she took it public and defamed my reputation."

f. In response to a question about how compensation was structured with Defendant, Defendant said, "Depends on how you look at it. I was paid as an independent contractor however the terms and conditions were never clear as we never had a formal contract or business agreement. Huge mistake on my part believing I could trust her to be fair and not demanding a contract or explicit terms of employment. I left myself wide open to be taken advantage of and exploited. And I take full accountability for that."

g. ". . . because of her influence and size of her platform it's been intimidating and scary to speak my truth. But I've spent the last two years intensively healing and I'm not afraid anymore. The truth always prevails."

h. "I've spent the last two years doing intensive healing work so I'm good. And the truth needs to be spoken. No one is to blame and we are BOTH accountable. I've taken accountability for my part of the co-creation. Im not afraid of my shadow anymore."

59. In contrast to the Defendant's defamatory statements and follow up comments concerning how she was taken advantage of by Plaintiffs, Plaintiffs discovered that, during the course of Defendant's employment, Defendant never formally or informally complained to Plaintiffs about her work, her roles and responsibilities, or her involvement in the Plaintiffs' business.

60. Rather, Defendant and her then husband were included on Plaintiffs' business trips and retreats and enjoyed the attention that they received from Plaintiffs' clients.

61. Furthermore, Plaintiffs discovered that Defendant was consistently delegating her work and her tasks to Plaintiffs' assistants, without Plaintiffs' authorization and without the Plaintiffs' knowledge.

62. On December 13, 2022, our firm sent a cease-and-desist letter to Defendant via email and overnight mail demanding that she remove the posts from Instagram and TikTok and that she cease and desist from making any further defamatory statements.

63. Defendant confirmed receipt of the foregoing letter in a video/post on TikTok where she stated that she had received our cease-and-desist letter and that "this will have to play out a little differently than I thought but I will find another way to tell my truth." Clearly, Defendant has every intention of continuing with her plans to harm Dr. Shefali's reputation.

64. On or about December 17, 2022, Defendant posted a video on TikTok of Dr. Shefali speaking with the hashtags "#psychologicalabusesurvivor", "#drshefali", "#drshefalitsabary" and "#narcissisticabusesurvivor".

65. As of the date of the filing of this Complaint, the videos and posts referred to herein remain on Instagram and TikTok.

## CLAIMS FOR RELIEF

### COUNT I
### (Conversion)

66. Plaintiffs repeat, reiterate and reallege each and every allegation contained within paragraphs "1" through "64" as if fully set forth herein.

67. The payments received from the courses sold on the Teachable platform belonged to Plaintiffs, as they were payments for Dr. Shefali's courses sold on that platform.

11

68. As set forth herein, rather than setting up the account on Teachable with payments to be deposited into Dr. Shefali's account, Defendant continuously switched the bank accounts so that payments would be made into her personal accounts.

69. Defendant intentionally, and without authority, exercised dominion and control over property belonging to Plaintiffs.

70. Defendant's actions interfered with Plaintiffs' right of possession of money that rightfully belonged to Plaintiffs and were in derogation of Plaintiffs' rights.

71. Based upon the foregoing, Plaintiffs have been damaged in the amount of $1,037,213.98, plus interest, reasonable attorney's fees, costs and disbursements.

## COUNT II
### (Unjust Enrichment)

72. Plaintiffs repeat, reiterate and reallege each and every allegation contained within paragraphs "1" through "70" as if fully set forth herein.

73. Defendant was enriched, at Plaintiffs' expense, by transferring payments for Plaintiffs' courses to her own personal accounts.

74. Plaintiffs did not authorize, nor was Defendant entitled to, receive the payments that she transferred to her personal accounts in the amount of $1,138,113.98.

75. To permit Defendant to retain the amount of money that she stole from Plaintiffs would be against equity and good conscience.

76. Defendant returned $100,900.00 to Plaintiffs, leaving a balance owed of $1,037,213.98.

77. Based upon the foregoing, Plaintiffs have been damaged in an amount to be determined

at trial, but in no event less than $1,037,213.98, plus interest, reasonable attorney's fees, costs and disbursements.

**COUNT III**
**(Defamation Per Se)**

78. Plaintiffs repeat, reiterate and reallege each and every allegation contained within paragraphs "1" through "76" as if fully set forth herein.

79. Defendant made both oral and written factual statements about Dr. Shefali on Instagram and TikTok on December 6, 2022, December 8, 2022, December 9, 2022 and December 17, 2022 about her in her professional capacity as a clinical psychologist.

80. On or about December 6, 2022, Defendant stated in a post on Instagram that she had suffered "abuse at the hands of a well-known clinical psychologist (and her doctor boyfriend)." One of the hashtags that she used was "#drshefalitsabary".

81. Defendant continued in the same post, "I was gaslit and psychologically manipulated to the point of wanting to unalive myself. I was broken down and beaten psychologically at the hands of someone who is supposed to do no harm."

82. Defendant further stated in the same post, "What you did was criminal…"

83. On or about December 6, 2022, Defendant made the following post on TikTok:

> "Gaslighting and narcissistic abuse is disorienting and challenging to navigate. When the narcissistic abuse comes from a mental health clinician and someone well revered with credentials and a huge platform and thousands of faithful believers it becomes a complete mind f*ck. If you've ever been gaslit by a mental health clinician or medical doctor, you are not crazy and you're not alone. We need to speak up and take our power back."

84. In the foregoing post, Defendant used the hashtags "#drshefali" and "drshefalitsabary".

85. On December 9, 2022, in a video on TikTok, Defendant stated that Dr. Shefali abused her.

86. The foregoing statements made by Defendant were made with actual malice – they were made with the knowledge that they were false, or, at a minimum, with reckless disregard to whether they were false or not.

87. The statements made by Defendant were false statements that would tend to injure Plaintiff in her profession as a clinical psychologist and were defamatory per se. Before publishing these false statements, Defendant knew, or should have known, that her statements concerning Dr. Shefali were false and misleading, and therefore reckless as to the truth of the statements.

88. Based upon the foregoing, Dr. Shefali has been damaged in an amount to be determined at trial, including costs and reasonable attorney's fees.

### COUNT IV
**(Preliminary and Permanent Injunctive Relief)**

89. Plaintiffs repeat, reiterate and reallege each and every allegation contained within paragraphs "1" through "88" as if fully set forth herein.

90. Plaintiffs have no adequate remedy at law.

91. Plaintiffs will suffer serious and irreparable injury if the permanent injunction is not granted in their favor.

92. The equities are balanced in favor of the Plaintiffs.

93. Plaintiffs have been damaged by the wrongful actions of Defendant and/or her agents and will continue to be damaged until such actions are stopped.

94. This injunctive relief is not adverse to public interest.

95. As a result of the foregoing, Plaintiff is entitled to injunctive relief, permanently

enjoining and restraining Defendant from further making or publishing false, defamatory statements about Plaintiffs; and ordering and directing Defendant to remove or delete all disparaging, defamatory, and harmful statements regarding Plaintiffs, including, without limitation, the removal and deletion of those posts made to Defendant's various social media accounts and platforms, as well as upon any other platform.

## COUNT IV
**(Tortious Interference with Prospective Economic Advantage)**

96. Plaintiffs repeat, reiterate and reallege each and every allegation contained within paragraphs "1" through "94" as if fully set forth herein.

97. With a malicious intent and/or reckless disregard for the truth, Defendant has interfered, and sought to interfere, with Plaintiffs' business relationships with their colleagues, peers, clients and/or potential clients, and with former and possibly future patients.

98. Defendant's interference with these relationships was solely and directly intended to destroy Plaintiffs' reputation.

99. Indeed, Defendant's own influence, followers, and/or reach on her social media platforms consists of clients and potential clients of Dr. Shefali that were otherwise introduced to Defendant by and through her employment with Plaintiffs between 2017 and 2020.

100. Defendant has intentionally portrayed Dr. Shefali, a licensed clinical psychologist, as abusive and criminal, and has actively and intentionally sought to utilize her social media platforms to "tell [Defendant's] truth" concerning these allegations of abuse at the hands of Dr. Shefali.

101. Indeed, upon review of the comments made in response to the social media posts, Plaintiffs have identified several of their former and current clients that have commented, responding to the posts as follows:

15

a. "I literally just watched one of her videos on here. It's weird seeing her in a different light now."

b. "Greta, can you offer a 2 hour talk on what you learned being in service to Shefali? From the good, the bad, the great, and the ugly? Say $50? Where can we pay to sign up. Let's just all talk! Anyone else want to attend?"

c. "Suggestion… play her louder and take music off so people can hear it more clearly! I saw right through her years ago. Her arrogance is disgusting. Spiritual "gurus" needs the most help."

102. As a direct result of Defendant's interference with Plaintiffs' business relationships, including colleagues, peers, clients and/or potential clients, and with former and possibly future patients, Plaintiffs and their reputation have been substantially harmed.

103. Based upon the foregoing, Plaintiffs have been damaged as a direct and proximate results of Defendant's tortious interference, in an amount to be determined at trial, including costs and reasonable attorney's fees.

**WHEREFORE**, Plaintiffs, Dr. Shefali Tsabary and Global Inner Disarmament, LLC, demand judgment against Defendant, Greta Harman, as follows:

A. On the First Claim for Relief, judgment in the amount of $1,037,213.98, plus interest;

B. On the Second Claim for Relief, judgment in the amount of $1,037,213.98, plus interest;

C. On the Third Claim for Relief, a judgment permanently enjoining and restraining Defendant from further making or publishing false, defamatory statements about Plaintiffs; and ordering and directing Defendant to remove or delete all disparaging, defamatory, and harmful statements regarding Plaintiffs, including, without limitation,

the removal and deletion of those posts made to Defendant's various social media accounts and platforms, as well as upon any other platform;

D. On the Fourth Claim for Relief, judgment in an amount to be determined at trial;

E. Reasonable attorney's fees;

F. Costs and disbursements; and

G. Such other and further relief as the Court deems just and proper.

Dated: New City, New York
January 9, 2023

                              CATINA & MARA, PLLC

                              By: _s/Laura M. Catina_____
                                      Laura M. Catina
                                      Amy M. Mara
3 E. Evergreen Rd. #358
New City, New York 10956
T: (845) 709-8968
F: (845) 709-8882
laura@catinamara.com
amy@catinamara.com

*Attorneys for Plaintiffs*